FILED

2012 OCT 15 AM 10:09

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1 | THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok (SBN #256599)
2 | devin@devinfoklaw.com
P.O. Box 7165
3 | Alhambra, CA 91802-7165
Phone: (310) 430-9933
4 | Fax: (323) 563-3445

5 | A NEW WAY OF LIFE REENTRY PROJECT
Joshua E. Kim (SBN #257260)
6 | joshua@anewwayoflife.org
958 E 108th Street
7 | Los Angeles, CA 90059
Phone: (323) 563-3575
8 | Fax: (323) 563-3445

9 | Attorneys for Plaintiff and the Proposed Class
10 | *[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES REGALADO, individually and on behalf of the putative classes,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>RYDER INTEGRATED LOGISTICS, INC., a Delaware corporation, and DOES 1-10 inclusive,<br><br>　　　　　Defendants. | Case No. 12-cv-05737-DSF(FFMx)<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

THIRD AMENDED CLASS ACTION COMPLAINT, Case No. 12-5737-DSF

Plaintiff ANDRES REGALADO ("Plaintiff"), on behalf of himself and all similarly situated individuals, complains and alleges against Defendant RYDER INTEGRATED LOGISTICS, INC. ("Ryder") as follows:

## NATURE OF THE ACTION

1. Ninety-two percent of all employers, including Ryder, routinely obtain consumer reports on prospective and existing employees. Employers, including Ryder, frequently rely on such information as a basis for adverse employment action, e.g., denial of employment.[1]

2. Background check companies, or consumer reporting agencies, provide consumer reports based on criminal history data maintained in their own proprietary databases. These companies compile information from various sources including state and federal criminal record repositories.

3. Many large-scale employers, including Ryder, rely on consumer reporting agencies to determine job applicants' eligibility for employment. This determination is made without the employer independently reviewing the applicant's consumer report, and without providing the employee with an opportunity to dispute the information contained therein.

4. Plaintiff was conditionally hired by Ryder as a truck driver pending, *inter alia*, a successful background check.

5. He was subsequently rejected from employment based solely on a consumer reporting agency's notation that the criminal background information contained in Plaintiff's background check report fell outside of "pre-determined criteria."

---

[1] EEOC Enforcement Guidance, *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq.* (April 25, 2012), p. 6 (http://www.eeoc.gov/laws/guidance/upload/arrest_conviction.pdf (last visited May 31, 2012)).

6. The actual criminal history information that formed the basis for the conclusion that Plaintiff fell "outside of pre-determined criteria" was a six-year-old conviction for violating an ordinance relating to operating a business without a license.

7. The actual criminal history information was never provided to Ryder by the consumer reporting agency. Nor was it provided to Plaintiff.

8. Plaintiff was never provided with any pre-adverse action notice from Ryder. Instead, he found out that Ryder had decided not to employ him only after he initiated a phone call to Ryder's human resource department after a long period of silence following the conditional offer.

9. The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, imposes certain duties on users of consumer reports, including employers.

10. Under 15 U.S.C. § 1681b(b)(3)(A), **before** taking any adverse employment action based in whole or in part on a consumer report, the employer must provide to the job applicant:

   a. a copy of the consumer report; and

   b. a description in writing of the rights of the consumer under the FCRA.

11. The reasons for the "pre-adverse action notice" requirement in employment situations are to alert the job applicant that he is about to be rejected based on the content of a report, and to give him an opportunity to challenge the accuracy or relevancy of the information with the credit reporting agency or the employer before the job prospect is lost.

12. Congress recognizes that these rights are extremely important to the consumer and help "to insure that consumer reporting agencies exercise their *grave responsibilities* with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681(a)(4) (emphasis added).

13. The pre-adverse action notice requirement is unqualified. "Employers must comply with the pre-adverse action disclosure requirement even where the information contained in the consumer report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action." FTC, *40 years of Experience with the Fair Credit Reporting Act* (July 2011) p. 53.

14. This requirement makes sense because even where the applicant was justly denied employment, he would be informed that his criminal history was a factor in the employer's adverse employment decision, and would be motivated to seek various state remedies to expunge his criminal records. In California, this is called a dismissal pursuant to Penal Code § 1203.4.

15. To ensure knowing compliance with FCRA, Congress further requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) by providing the consumer with a pre-adverse action notice whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S.C. §1681b(b)(1)(A).

16. Ryder knowingly, voluntarily, and with the assistance of its counsel, executed a certification providing that it would comply with various provisions of the FCRA, including providing a pre-adverse notice, whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

17. Despite its certification, Ryder knowingly violated 15 U.S.C. § 1681b(b)(3) by failing to provide its job applicants and employees with pre-adverse action notices.

4

THIRD AMENDED CLASS ACTION COMPLAINT, Case No. 12-5737-DSF

18. Based on these violations, Plaintiff asserts FCRA claims against Ryder on behalf of himself and those similarly situated for Ryder's intentional failure to provide the notices as described above.

## JURISDICTION AND VENUE

19. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

20. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(2). Plaintiff resides in this district, the wrongs alleged herein occurred in this district, and Defendant regularly conducts business in this district.

## THE PARTIES

21. Plaintiff ANDRES REGALADO is, and at all times relevant hereto was, an individual over the age of 18 and a resident of Los Angeles County, California.

22. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a(c) because he is an individual.

23. Defendant RYDER INTEGRATED LOGISTICS, INC. is a Delaware corporation that conducts business throughout the United States, including in Los Angeles County, California. Ryder has its headquarters and principal place of business in Miami, Florida.

24. At all times pertinent hereto, Ryder was a user of consumer reports and is subject to regulation under 15 U.S.C. § 1681b.

## FACTUAL ALLEGATIONS

25. In 2005, Plaintiff was convicted of a misdemeanor violation of Torrance Municipal Code, Division 3, Chapter 1, Article 3, section 31.3.1, "Carrying on Business Without a License," because he was hired by an unlicensed contractor to paint address numbers on a street curb.

26. Six years later, on or about April 28, 2011, Plaintiff applied for work as a truck driver with Ryder. He was interviewed in person and contingently hired

1 the following day pending the successful completion of a background check, a DOT
2 pre-employment physical, a road test, and a post-offer drug screening test.

3     27.    Plaintiff successfully completed and/or passed all conditions except the
4 background check.

5     28.    On or about April 29, 2011, Ryder sent a request for a background
6 check on Plaintiff to American Background Information Services ("ABI").

7     29.    On or about May 12, 2011, Ryder received a two-page summary report
8 entitled "Risk Score Report" from ABI characterizing the results of Plaintiff's
9 background ground screening as: "Yellow – Information returned regarding the
10 above referenced applicant falls outside the predetermined criteria." "Reason:
11 Criminal." A copy of the summary adjudication is attached as Exhibit 1.

12     30.    Relying solely on this information, Ryder determined that Plaintiff had
13 "FAILED CRIMINAL." (*See* Exhibit 2). Accordingly, Ryder noted that Plaintiff
14 had not met all of his required conditions for employment and denied him
15 employment based on the information contained in the consumer report.

16     31.    Ryder did not issue a notice to Plaintiff prior to the adverse action.

17     32.    Plaintiff never received a pre-adverse action notice from Ryder.

18     33.    Plaintiff never received a copy of his background check report from
19 Ryder.

20     34.    Because Ryder did not provide Plaintiff with a copy of the consumer
21 report that it relied upon, and did not provide Plaintiff with an explanation for its
22 decision to deny employment, Plaintiff did not know why he was denied
23 employment until October 24, 2011—almost five months following his denial of
24 employment. At that time, Plaintiff learned that the basis for the denial was his
25 conviction for operating a business without a license.

26     35.    Plaintiff was deprived of any opportunity to review the information in
27 the consumer report and discuss it with his employer before Ryder made the
28 decision not to hire him.

6

36. During the relevant period, ABI provided, and continues to provide, consumer reports to Ryder under a service agreement. Under the service agreement, Ryder certified to ABI that it would comply with the FCRA, including provisions specifically and directly relating to its duty to provide pre-adverse action notices to its job applicants and employees.

37. Ryder knowingly, voluntarily, and with the assistance of its counsel signed the service agreement including the above-mentioned certification.

38. Therefore, Ryder is well-aware of its obligations to provide pre-adverse action notices to its job applicants and employees whenever it decides to take adverse action. Nevertheless, Ryder neither directly provides such notices nor contracts with ABI to do so.

39. Among its service offerings, ABI provides a service called "Compliance Fulfillment," which purports to assist the employer in complying with the FCRA by automatically generating and mailing pre-adverse action notices to the consumer along with a copy of the consumer report under the employer's letterhead whenever there has been an adverse adjudication by ABI based on the pre-determined criteria supplied by Ryder. *See* http://www.american background.com/vaddedservices.aspx?tab=2 (last visited on May 28, 2012).

40. Consumer reporting agencies routinely provide a similar service and many employers purchase it. Ryder could have easily and cost-effectively complied with the mandates of the FCRA by purchasing this service, but failed to do so.

41. Ryder knew or had reason to know that its conduct was inconsistent with published Federal Trade Commission ("FTC") guidance interpreting the FCRA and the plain language of the statute.

## CLASS ACTION ALLEGATIONS

42. Ryder's practices and procedures described herein affected and continue to affect Plaintiff and other consumers who have been subject to an adverse employment action on the basis of information in consumer reports.

43. Plaintiff asserts his claims in Counts 1 and 2 on behalf of a Putative Class defined as follows:

> All natural persons residing in the United States who, within two years from the filing of this action, were the subject of a consumer report prepared at the request of Ryder for employment purposes and who were subject to an adverse employment action based on that report.

44. <u>Numerosity</u>: The Class is so numerous that joinder of all members is impracticable. Ryder regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action. Plaintiff is informed and believes that, during the relevant time period, Ryder failed to provide a pre-adverse action notice to thousands of employees and prospective employees. The numerosity of the proposed class satisfies the definition of the Putative class.

45. <u>Commonality</u>: There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. Those questions include:

   (a) whether Ryder violated 15 U.S.C. § 1681b(b)(3)(A) by failing to provide pre-adverse action notice to consumers before taking adverse action in whole or in part based on a consumer report; and

   (b) whether Ryder's violations were willful.

46. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories. Ryder typically uses consumer reports to conduct background checks on employees and prospective employees. Ryder typically contingently hires these

employees prior to conducting background checks, and only orders background checks after it has been determined that employees are qualified for the position. Ryder routinely takes adverse action based in whole or in part on consumer reports, and denies employment to consumers who do not receive a "green" adjudication. Finally, Ryder typically does not provide pre-adverse action notices to these consumers prior to the taking of adverse action. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Ryder treated Plaintiff consistently with other Putative Class members in accordance with its standard policies and practices.

47. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter and has no conflict with the Class. Plaintiff has secured counsel experienced in handling civil rights and consumer class actions.

48. This action should be maintained as a class action pursuant to Rule 23(b)(3) because the questions of law and fact common to Class Members predominate over any questions affecting only individual Class members, and a class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class Members in individually controlling the prosecution of separate claims against Ryder is small. Management of the Class claims will avoid inconsistent judgments and result in a more efficient use of judicial resources than resolving these same issues in many individual cases.

49. Ryder, solely or in combination with ABI, maintains records based on which all class members can be identified. These records also contain address information. Upon certification, Plaintiffs will send class notice via first class mail to all members of the class, such notices to be mailed to class members' last known address as determined by comparing Ryder's information with the National Change of Address database.

9

THIRD AMENDED CLASS ACTION COMPLAINT, Case No. 12-5737-DSF

# FIRST CAUSE OF ACTION
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. §§ 1681b(b)(3)(A)
### (on behalf of Plaintiff and the Class)

50. Plaintiff realleges and incorporates each of the foregoing paragraphs as though fully set forth herein.

51. Ryder used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Putative Class.

52. Ryder violated the FCRA by failing to provide Plaintiff and other Putative Class members, prior to taking adverse action, with notice that adverse action would be taken in whole or in part based on a consumer report, along with a copy of the consumer report and a compliant description in writing of the rights of the consumer.

53. The foregoing violations were willful. Ryder acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Class members under 15 U.S.C. § 1681b(b)(3)(A). The willfulness of Ryder's conduct is reflected by, among other things, the following facts:

  a. Based on the plain language of the statute, legal advice provided by its own general counsel or outside employment counsel, and published FTC guidance, Ryder knew or should have known that its failure to provide pre-adverse action notice was unlawful;

  b. Moreover, based on the certification executed and memorialized by ABI and itself, Ryder explicitly acknowledged that it has the duty to provide a pre-adverse action notice as specified under the FCRA;

  c. Ryder could have complied with the statutory duty to provide a pre-adverse action notice either by sending the notice directly to the affected consumer job applicant, or by contracting with ABI to do so on its behalf;

d. Despite the clear notice of the law, full ability to comply, and ample opportunity, Ryder failed to adopt any measure which would have provided the required notice to Plaintiff and the Class.

54. Plaintiff and the Putative Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A).

55. Plaintiff and the Putative Class are further entitled to recover their costs and attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in favor of himself and the proposed Classes:

1. That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class;

2. That judgment be entered against Ryder and in favor of Plaintiff and Class members for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

3. That judgment be entered against Ryder for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

4. That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n; and

5. That the Court grant such other and further relief as may be just and proper.

| | | |
|---|---|---|
| 1 | DATED: October 15, 2012 | By: _[signature]_____ |
| 2 | | NICHOLS KASTER, PLLP |
| 3 | | E Michelle Drake (admitted *pro hac vice*) |
| | | drake@nka.com |
| 4 | | 80 S. Eighth St. 4600 IDS Center |
| | | Minneapolis, MN 55402 |
| 5 | | Phone: (612) 256-3200 |
| | | Fax: (612) 3384878 |
| 6 | | NICHOLS KASTER, LLP |
| 7 | | Robert L. Schug (SBN# 249640) |
| | | rschug@nka.com |
| 8 | | One Embarcadero Center, Suite 720 |
| | | San Francisco, CA 94111 |
| 9 | | Phone: (415) 277-7235 |
| | | Fax: (415) 277-7238 |
| 10 | | THE LAW OFFICES OF DEVIN H. FOK |
| 11 | | Devin H. Fok (SBN #256599) |
| | | devin@devinfoklaw.com |
| 12 | | P.O. Box 7165 |
| | | Alhambra, CA 91802-7165 |
| 13 | | Phone: (310) 430-9933 |
| | | Fax: (323) 563-3445 |
| 14 | | A NEW WAY OF LIFE REENTRY PROJECT |
| 15 | | Joshua E. Kim (SBN #257260) |
| | | joshua@anewwayoflife.org |
| 16 | | 958 E. 108th St. |
| | | Los Angeles, CA 90059 |
| 17 | | Phone: (323) 563-3575 |
| | | Fax: (323) 563-3445 |

### DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a jury trial on all issues triable by jury.

DATED: October 15, 2012                    NICHOLS & KASTER, LLP

By: _[signature]_____
E. Michelle Drake

# EXHIBIT 1



# Confidential
## Risk Score Report

**Ryder / Integrated Logistics of CA**

| | |
|---|---|
| Account: | 87M2960 |
| Employee Charged Location Code | 7583 |
| Position Title | Class A Driver |
| Business Unit | Integrated Logistics |
| Recruiter's Email Address | daniel_e_carroll@ryder.com |
| Requisition Number | 229 |
| Position Code | 1 |
| Type of driving experience required | 1 Year |
| Recruiter's Name | Daniel Carroll |
| Comments | |
| User's SAP ID | |
| External Posting Advertised Job Title | |
| PrevEmploy 1 | |
| PrevEmploy 2 | |
| PrevEmploy 3 | |
| PreviousLicensePast3Yrs | |
| Date Sent: | May-12-2011 |
| Applicant Name: |  |

Case #: ▬

**Results:**

Yellow

Information returned regarding the above referenced applicant falls outside the predetermined criteria.

**Reason:**

Criminal

**Comments:**

**Package:**

Social A la Carte(Social Locator)
ILCA - BG: Criminal(Criminal, Risk Scoring, Treasury Enforcement, US National Sex Offender Registry, Additional Criminal Searches)

# EXHIBIT 2

**Ryder Integrated Logistics of California**
**On-Line Applicant Check Off List**

Applicants Name: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

S.S.#: ▓▓▓▓▓▓▓▓▓▓

Home Phone: ▓▓▓▓▓▓▓▓▓▓  Cell Phone: ▓▓▓▓▓▓▓▓▓▓

1. [✓] Application Received on: 4/29/11 With the following pages completed and attached:   Start Date: _____   Start Pay: _____
    - [✓] a. Application for Employment
    - [✓] b. Employment Record (2 pages)   Code: _____

2. [ ] Call placed to the applicant requesting copies of the following on: _____
    1. [✓] Commercial Driver License
    2. [✓] Both sides of the driver's Medical Card
    3. [✓] Social Security Card
    4. [✓] Safety Performance History Records Request
    5. [✓] Current Motor Vehicle Report (H-6) (pulled within 30 days)

3. [✓] Ryder paper application received on: 4/29/11
4. [✓] Application Screened by: DQ
5. [ ] Application E-mailed to Site Manager on: _____
6. [✓] Recruiter interview by: DQ on: 4/29/11 Results: PASS
7. [ ] Site Manager interview by: _____ on: _____ Results: _____
8. [✓] Road Test on: 4/29/11 Results: PASS (Pass/Fail)
9. [ ] Site Manager Authorization E-Mail Received on: _____ Results: _____
10. [✓] Contingent Letter presented/signed on: 4/29/11
11. [✓] Sent for Drug Screen/DOT Physical on: 4/29/11
12. [✓] Received results from DOT Physical on: 4/29/11 Results: COMP.
13. [✓] Received drug screen results on: 5/3/11 Results: NEG Initials: DQ
14. [✓] Sent to Backgrounds on: 4/29/11
15. [✓] Background complete on: 5/11/11 Results: PASS
16. [✓] Criminal History complete on: 5/12/11 Results: FAIL
17. [ ] Final Recruiting Manager review on: _____ By: _____
18. [ ] Job offer made on: _____ Start Date: _____
19. [ ] Orientation completed on: _____
20. [ ] Misc. NIZZO ACCIDENT REPORT
21. [ ] FROM '08
22. [ ] FAILED CRIMINAL